IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | | |
|---|---|---|
| THOMAS HOBBS, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION FILE NO.: |
| | ) | |
| vs. | ) | 4:20-cv-00151-RSB-CLR |
| | ) | |
| SALEM HOLDING COMPANY and | ) | |
| SALEM LEASING CORPORATION | ) | |
| d/b/a SALEM NATIONAL LEASE, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' FIRST AMENDED ANSWER AND DEFENSES TO PLAINTIFF'S COMPLAINT FOR DAMAGES AND COUNTERCLAIM

COME NOW, SALEM HOLDING COMPANY and SALEM LEASING CORPORATION d/b/a SALEM NATIONAL LEASE, defendants in the above-styled civil action, and hereby file and serve their First Amended Answer and Defenses to Plaintiff's Complaint and Counterclaim pursuant to Fed.R.Civ.P. 13 and 15, respectfully showing as follows:

### FIRST DEFENSE

Plaintiff has failed to state a claim against defendants upon which relief may be granted.

### SECOND DEFENSE

As a second defense, defendants respond to the individually numbered paragraphs of plaintiff's Complaint as follows:

1.

Defendants admit the allegations contained in paragraph 1 of plaintiff's Complaint.

2.

Defendants admit the allegations contained in paragraph 2 of plaintiff's Complaint.

- 1 -

3.

Defendants admit the allegations contained in paragraph 3 of plaintiff's Complaint.

4.

Defendants deny the allegations contained in paragraph 4 of plaintiff's Complaint.

5.

Defendants deny the allegations contained in paragraph 5 of plaintiff's Complaint.

6.

Defendants can neither admit nor deny the allegations contained in paragraph 6 of plaintiff's Complaint for want of sufficient information to form a belief as to the truth thereof and put plaintiff upon strict proof of same.

7.

Defendants admit that plaintiff purports to assert claims that would be within the venue and jurisdiction of this Court.  Responding further, defendants specifically deny that they committed any wrongful acts or that plaintiff is entitled to recover anything from defendants.

8.

Defendants admit that plaintiff purports to assert claims that would be within the jurisdiction of this Court.  Responding further, defendants specifically deny that they committed any wrongful acts or that plaintiff is entitled to recover anything from defendants.

## II.  FACTUAL ALLEGATIONS

9.

Defendants incorporate herein by reference as if fully set forth herein their responses to paragraphs 1 through 8 of plaintiff's Complaint.

{Firm/1293/00005/02719441.DOCX }

10.

Defendants can neither admit nor deny the allegations contained in paragraph 10 of plaintiff's Complaint for want of sufficient information to form a belief as to the truth thereof and put plaintiff upon strict proof of same.

11.

Defendants can neither admit nor deny the allegations contained in paragraph 11 of plaintiff's Complaint for want of sufficient information to form a belief as to the truth thereof and put plaintiff upon strict proof of same.

12.

Defendants deny the allegations contained in paragraph 12 of plaintiff's Complaint.

13.

Defendants can neither admit nor deny the allegations contained in paragraph 13 of plaintiff's Complaint for want of sufficient information to form a belief as to the truth thereof and put plaintiff upon strict proof of same.

14.

Defendants deny the allegations contained in paragraph 14 of plaintiff's Complaint.

### III.  NEGLIGENCE OF SALEM HOLDING COMPANY, SALEM LEASING CORPORATION, d/b/a SALEM NATIONAL LEASE

15.

Defendants incorporate herein by reference as if fully set forth herein their responses to paragraphs 1 through 14 of plaintiff's Complaint.

16.

Defendants deny the allegations contained in paragraph 16 of plaintiff's Complaint.

{Firm/1293/00005/02719441.DOCX }

18.[1]

Defendants deny the allegations contained in paragraph 18 of plaintiff's Complaint.

19.

Defendants deny the allegations contained in paragraph 19 of plaintiff's Complaint.

20.

Defendants deny the allegations contained in paragraph 20 of plaintiff's Complaint.

21.

Defendants deny the allegations contained in paragraph 21 of plaintiff's Complaint.

22.

Defendants deny the allegations contained in paragraph 22 of plaintiff's Complaint.

## IV.  INJURIES AND DAMAGES OF PLAINTIFF

23.

Defendants incorporate herein by reference as if fully set forth herein their responses to paragraphs 1 through 22 of plaintiff's Complaint.

24.

Defendants deny the allegations contained in paragraph 24 of plaintiff's Complaint.

25.

Defendants deny the allegations contained in paragraph 25 of plaintiff's Complaint.

26.

Defendants deny the allegations contained in paragraph 26 of plaintiff's Complaint.

27.

Defendants deny the allegations contained in paragraph 27 of plaintiff's Complaint.

---

[1] Plaintiff's Complaint does not have a paragraph 17.

{Firm/1293/00005/02719441.DOCX }

28.

Defendants deny the allegations contained in paragraph 28 of plaintiff's Complaint.

29.

Defendants deny all allegations, to the extent that they exist, in the unnumbered "WHEREFORE" section, including all subparts, of plaintiff's Complaint. Further, defendants deny that plaintiff is entitled to any of the relief requested in the "WHEREFORE" section, including all subparts, of plaintiff's Complaint.

30.

All other allegations contained in plaintiff's Complaint not hereinbefore specifically responded to are hereby denied.

## THIRD DEFENSE

To the extent as may be shown by the evidence through discovery, any alleged damages as set forth in plaintiff's Complaint were directly and proximately caused by individuals or entities other than defendants and over which defendants had no control.

## FOURTH DEFENSE

No act or omission on the part of defendants caused or contributed to the alleged damages set forth in plaintiff's Complaint.

## FIFTH DEFENSE

Plaintiff's acts and/or omissions constitute an independent, intervening cause of plaintiff's alleged injuries necessarily precluding any liability against defendants.

## SIXTH DEFENSE

Any alleged damages as set forth in plaintiff's Complaint were not foreseeable to defendants.

- 5 -

## SEVENTH DEFENSE

Plaintiff's claims are barred because, at all times, defendants acted reasonably and in good faith, in accordance with any and all laws, rules, regulations or other authority, and have not taken any action or inaction that breached any duties allegedly owed to plaintiff.

## EIGHTH DEFENSE

Defendants submit that, at all relevant times, they complied with applicable federal, state and/or local law, regulations, guidelines and recommendations.

## NINTH DEFENSE

Plaintiff's Complaint is barred by the exclusive remedy provision.

## TENTH DEFENSE

Defendants cannot be responsible for any claims alleged herein because the subject truck did not contain any defects.  Further, defendants cannot be held responsible to the extent the e subject truck had been altered, misused, improperly installed, improperly serviced, improperly maintained and/or improperly repaired.

## ELEVENTH DEFENSE

To the extent as may be shown by the evidence through discovery, defendants submit that the alleged damages as set forth in plaintiff's Complaint were directly and proximately caused by the acts or omissions of others which constituted contributory and comparative negligence, assumption of risk, and failure to exercise ordinary care.

## TWELFTH DEFENSE

To the extent as may be shown by the evidence through discovery, defendants submit that plaintiff, through the exercise of ordinary and proper care, could have avoided the consequences of any alleged act or failure to act of defendants.  Defendants, however, deny that any act or failure

to act on their part caused or contributed to, in any way whatsoever, the damages complained of in plaintiff's Complaint.

## THIRTEENTH DEFENSE

To the extent as may be shown by the evidence through discovery, defendants submit that they are not liable because plaintiff's negligence equaled or exceeded that of defendants, if any. Defendants, however, deny that they produced, brought about, caused, or contributed to, in any way whatsoever, the damages complained of in plaintiff's Complaint.

## FOURTEENTH DEFENSE

Defendants did not breach any duty of care and were not on notice of anything that would cause injury or damage to anyone.

## FIFTEENTH DEFENSE

Defendants raise the defense of misnomer and real party in interest.

## SIXTEENTH DEFENSE

Plaintiff's alleged damages are too remote to be the basis of recovery against defendants pursuant to O.C.G.A. § 51-12-8.

## SEVENTEENTH DEFENSE

Defendants submit that, to the extent that plaintiff can establish some degree of wrongdoing by defendants, which defendants deny, defendants have a right to have the jury apportion damages according to each party's degree of fault.

## EIGHTEENTH DEFENSE

To the extent applicable, defendants assert each affirmative defense set forth in O.C.G.A. § 9-11-8 and Fed.R.Civ.P. 8.

## NINETEENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, based on the doctrines of waiver, release, ratification, estoppel and laches. Further, plaintiff's claims are barred, in whole or in part, because plaintiff consented to, authorized, approved, acquiesced to and/or ratified the actions about which plaintiff now complains.

## TWENTIETH DEFENSE

Plaintiff's claims are barred, in whole or in part, because plaintiff failed to mitigate his alleged damages, the existence of which is expressly denied.

## TWENTY-FIRST DEFENSE

Defendants state that they may have further and additional affirmative defenses which are not yet known to defendants, but which may become known through future discovery. Defendants specifically reserve the right to assert each and every affirmative defense as it may be ascertained through future discovery herein.

## COUNTERCLAIM AGAINST PLAINTIFF THOMAS HOBBS

Defendant/Counterclaim Plaintiff Salem Leasing Corporation d/b/a Salem National Lease incorporates all of its allegations contained in paragraphs 1-30 of Defendants' Answers to Plaintiff's Complaint, as though they were plead verbatim in this paragraph 1 of its Counterclaim.

1.

Hobbs has submitted himself to this jurisdiction by virtue of filing this action against Counterclaim Plaintiff Salem.

2.

On or about November 9, 2018, Hobbs executed a Short Term Lease Agreement (the "Agreement") with Salem for Salem's Truck No. 12403, a true and accurate copy of which is attached hereto as Exhibit "1."

3.

Pursuant to Section 2 of the executed Agreement, Hobbs acknowledged that he "examined and inspected" the truck for defects before taking exclusive control and possession of the truck.

4.

Pursuant to Section 2 of the executed Agreement, Hobbs "confirm[ed] that [the truck was] in good condition and repair[,]" with the exception of a paint chip near the windshield on the passenger side of the truck.

5.

Pursuant to Section 16 of the Agreement, Hobbs agreed to "immediately notify" Salem if the truck became unusable for any reason.

6.

From November 9, 2018 through November 12, 2018, Hobbs never notified Salem of any alleged defects that would render the truck unusable.

7.

Plaintiff alleges that, on November 12, 2018, he caught his left foot on a loose floor panel at the threshold of truck no. 12403 and ultimately fell to the ground.

8.

The Agreement was in full force and effect as of November 12, 2018, the date of the incident alleged in plaintiff's Complaint.

9.

Pursuant to Section 8 of the Agreement, Hobbs agreed to "defend, indemnity and hold [Salem] harmless" from, among other things, "claims, demands, fines, penalties and liabilities ("Loss") not covered" by certain insurance not applicable to the facts at issue in this case; and "injuries sustained by Customer or any driver, servant, agent or employee of Customer . . ."

## COUNT I: BREACH OF CONTRACT

10.

Defendant/Counterclaim Plaintiff Salem Leasing Corporation d/b/a Salem National Lease hereby restates and incorporates by reference Paragraphs 1 through 9 of this Counterclaim as if fully set forth herein.

11.

The Agreement is a valid and enforceable contract.

12.

Salem fully performed its obligations under the Agreement.

13.

Hobbs failed to inspect the truck prior to taking exclusive possession of the truck as required by the Agreement.

14.

Hobbs failed to notify Salem of any alleged defects as required by the Agreement.

15.

Accordingly, Hobbs has breached the Agreement and Salem has been damaged in an amount to be determined by at trial.

{Firm/1293/00005/02719441.DOCX }

## COUNT II: CONTRACTUAL INDEMNIFICATION

16.

Defendant/Counterclaim Plaintiff Salem Leasing Corporation d/b/a Salem National Lease hereby restates and incorporates by reference Paragraphs 1 through 15 of the Third-Party Complaint as if fully set forth herein.

17.

By his execution of the Agreement, Hobbs expressly agreed to indemnify and hold Salem harmless.

18.

By bringing this action, Hobbs has breached the Agreement and Salem has been damaged in an amount to be determined at trail.  Further, to the extent Hobbs receives a judgment against Salem or Salem is determined to be in any manner liable or responsible for damages or amounts sought by plaintiff, Salem is entitled to contractual indemnity from Hobbs for any and all such damages and amounts, pursuant to the Agreement.

## COUNT III: COSTS AND ATTORNEY'S FEES

19.

Defendant/Counterclaim Plaintiff Salem Leasing Corporation d/b/a Salem National Lease hereby restates and incorporates by reference Paragraphs 1 through 18 of the Counterclaim as if fully set forth herein.

20.

Pursuant to Section 17 of the Agreement, Hobbs is required to pay Salem "all costs, including attorney's fees, in connection with . . . the enforcement of any provisions of [the Agreement."

- 11 -

21.

Accordingly, Salem is entitled to reimbursement from Hobbs for any and all attorney's fees and costs associated with their defense in this matter and for the enforcement of the Agreement.

WHEREFORE, having answered fully, defendants SALEM HOLDING COMPANY and SALEM LEASING CORPORATION d/b/a SALEM NATIONAL LEASE respectfully request that this Court dismiss plaintiff's Complaint and cast all costs against plaintiff.

**DEFENDANTS DEMAND A TRIAL BY JURY.**

Respectfully submitted this 8th day of September, 2020.

<div style="margin-left:40%">

**Cruser, Mitchell, Novitz, Sanchez,
Gaston & Zimet, LLP**

*/s/ Sean Keenan*
Sean Keenan
Georgia Bar No. 523871
Email:  skeenan@cmlawfirm.com
Direct Dial:  678-684-2154
*Attorney for defendants*

</div>

Meridian II, Suite 2000
275 Scientific Drive
Norcross, GA 30092

- 12 -

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that I have this day filed the within and foregoing **DEFENDANTS'**

**FIRST AMENDED ANSWER AND COUNTERCLAIM** with the Clerk of Court via the

CM/ECF file and serve system which will automatically send notification of such filing to the

following counsel of record:

<div align="center">

Tyler Love
Allison J. Marani
RODEN LAW
333 Commercial Drive
Savannah, GA 31406
amarani@rodenlaw.com
tlove@rodenlaw.com

*(Attorneys for Plaintiff)*

</div>

This 8th day of September, 2020.

**Cruser, Mitchell, Novitz, Sanchez,
Gaston & Zimet, LLP**

*/s/ Sean Keenan*
Sean Keenan
Georgia Bar No. 523871

# EXHIBIT "1"



# SHORT TERM LEASE AGREEMENT

**SALEM**

### Rental Agreement
#### LOCATION # 025 GREENVILLE
119 SANDRA AVENUE
GREENVILLE, SC 29611
(864) 295-4266

DOT# 181069

This lessor cooperates with all federal, state, and local law enforcement officials nationwide to provide the identity of customers who operate our vehicles.

| LESSEE: | J.H. SEALE & SON INC | 001 - 10003390 - 000 |
|---|---|---|
| PO BOX 1513 | | |
| SUMTER , SC | LESSEE'S USDOT# | 2051129 |
| 29151 | PURCHASE ORDER NO. sub for 12402 | |
| VEHICLE NO. **12403**  TA Sleeper Smartway | TA SLEEPER W/2010 EPA +YR | |
| LICENSE NO. | | |
| WEIGHT LIMIT | 80000.00 | SERIAL NO. 1FUJGLBG1CLBP0250 |
| USE: | SUB-POWER PLANT | FOR UNIT _____ WHICH IS PERMANENTLY LEASED, AND TEMPORARILY OUT OF SERVICE. CONTRACT PROVISIONS OF THE TRUCK LEASE AND SERVICE AGREEMENT PREVAIL. |

| RENTAL AGREEMENT | No. |
|---|---|
| | **267593** |
| DATE VEHICLE IN | |
| DATE VEHICLE OUT | 11-09-18    4:01 PM |
| EST. VEH. RETURN DATE | 11-15-18 |

| OUT | IN |
|---|---|
| 11-09-18 | |
| 537027  DIST | _____ DIST |

Area of Operation

GA, NC, SC

## PHYSICAL CONDITION

NOTE EXISTING DAMAGE WITH "X" AND DESCRIBE BELOW
NOTE NEW DAMAGE WITH "O" AND DESCRIBE BELOW



ELD Issued: _____

ELD Returned: _____

Any ELD device not returned or returned with damage will incur a $200.00 fee per device.

FDA Requires Salem to clean and sanitize all Daily Rental Refrigerated units at rental turn in. Customer will be charged $25/box truck; $50/trailer to sanitize

EXISTING DAMAGE DESCRIPTION

NEW DAMAGE DESCRIPTION

| DISPATCHED | | WITH DAMAGE | | WITHOUT DAMAGE | CUSTOMER INITIALS |
|---|---|---|---|---|---|
| RECEIVED | | WITH DAMAGE | | WITHOUT DAMAGE | CUSTOMER INITIALS |

| WAS THERE AN | _____ YES | DRIVER'S SIGNATURE |
|---|---|---|
| ACCIDENT | _____ NO | |

CUSTOMER IS RESPONSIBLE FOR THOSE FUEL PERMITS OVER AND ABOVE WHAT IS ORIGINALLY ON UNIT         DRIVER'S SIGNATURE

I FULLY UNDERSTAND MY RESPONSIBILITY TO SUBMIT ALL DRIVERS TRIP REPORTS AND FUEL RECEIPTS TO SALEM NATIONALEASE IN A TIMELY MANNER, AND FAILURE TO DO SO WILL RESULT IN AN ADDITIONAL CHARGE OF 0.15 FOR EVERY MILE OPERATED.
LESSEE SIGNATURE: _____

| TRIP REPORT GIVEN TO DRIVER: | INITIALS |
|---|---|
| TRIP REPORT RETURNED WITH VEHICLE: | INITIALS |

COPY MUST BE IN VEHICLE

### WARNING
**DIESEL EXHAUST FLUID**
2011 & newer units require diesel exhaust fluid. Customer is responsible for damages to the unit resulting from failure to check and maintain diesel exhaust fluid levels.

LESSEE SIGNATURE _____

I HAVE READ THE TERMS AND CONDITIONS AS THEY APPEAR ON THIS RENTAL AGREEMENT AND ITS ATTACHMENTS, AND AGREE THERETO. RENTER IS RESPONSIBLE FOR ALL DAMAGES UNTIL VEHICLE IS PROPERLY CHECKED IN BY AN AUTHORIZED SNL REPRESENTATIVE.

LESSEE OR AGENT SIGNATURE: _____

| DRIVER'S NAME | THOMAS HOBBS |
|---|---|
| DRIVER'S PHONE | |
| DRIVER'S LICENSE NO. | 040728987 |
| EXPIRES | 02-21-23 |
| STATE ISSUED | GEORGIA |

## INSURANCE INFORMATION

CUSTOMER IS RESPONSIBLE TO PROVIDE LIABILITY, COLLISION, AND FIRE AND THEFT INSURANCE. SALEM NATIONALEASE SHALL NOT BE RESPONSIBLE FOR PROVIDING ANY INSURANCE. THIS VEHICLE HAS BEEN RELEASED TO AN "AUTHORIZED DRIVER" AS DEFINED ON THE REVERSE HEREOF (SEE PARAGRAPH 1). ONLY AN "AUTHORIZED DRIVER" IS PERMITTED TO OPERATE THIS VEHICLE. ALL ACCIDENTS MUST BE REPORTED IMMEDIATELY TO LESSOR.

### OPTIONAL PHYSICAL DAMAGE COVERAGE

It is agreed that for an additional daily fee, the Customer elects physical damage coverage (comprehensive and collision) for this unit as an "additional named insured" under the lessor's policy. The policy limits are the lesser of: the cost to repair or to replace, or the actual cash value of the unit. A $1,000 DEDUCTIBLE APPLIES PER ACCIDENT OR OCCURRENCE. This policy does not cover damage to cargo contained in a covered unit or damage to or loss of an uninsured power unit that may be attached to an insured trailer.
Customer's signature accepting terms of agreement: _____



**SHORT TERM LEASE AGREEMENT**

1. **USE:** This Short Term Lease Agreement ("STLA") covers the short term rental (not more than 30 days) of a vehicle by the actual owner of the vehicle ("Lessor") to Customer as described on the reverse side of this STLA. "Customer" means person(s) signing this Agreement and any other party to whom the charges incurred are billed, with Lessor's consent, at the express direction of such party or the person signing this Agreement, both being jointly and severally liable for such charges. "Vehicle" means the truck, tractor or trailer identified in this Agreement and all tires, tools, accessories and equipment attached thereto or contained therein. Customer does not acquire any title or ownership rights to the vehicle. Customer agrees that the vehicle will be operated by and be in the care, custody and control of Customer or Customer's employees or agents who will be safe and careful drivers, properly trained, hired, supervised and licensed, and at least 21 years of age ("Authorized Drivers"). Drivers not properly trained, hired, supervised, licensed or under 21 years of age are "unauthorized" drivers and Customer will indemnify Lessor for any liabilities or damage caused by such "unauthorized" drivers. Customer may not sublet or assign the vehicle or the rights or obligations under this STLA without the prior written consent of Lessor. Customer represents that the vehicle will be used principally for business and commercial purposes and not for agricultural or passenger carrying purposes . Customer will not permit the vehicle to be used to transport any toxic, dangerous, or illegal property or material, or property or material deemed hazardous by reason of being flammable, corrosive, explosive or fissionable or in violation of any recommendations of the manufacturer. THIS VEHICLE IS RENTED FOR USE SOLELY WITHIN THE UNITED STATES AND CANADA.

2. **CONDITION OF VEHICLE AT TIME OF LEASE:** Customer acknowledges that the vehicle has been examined and inspected by Customer and confirms that it is in good condition and repair except as noted on the reverse side.

3. **PAYMENTS:** Customer agrees that payments under this STLA are due within seven (7) days of invoice receipt, and any payments not made when due will be subject to late charges at the rate of 18% per annum or the maximum rate permitted by law, whichever is less. Each such invoice shall be conclusively presumed to be correct and to have been approved by Customer, unless the latter shall protest the same within five (5) days after such invoice has been mailed or delivered to Customer. Mileage charges are based on hubodometer, or at Lessor's option, odometer readings. Refrigeration unit charges are based on hourmeter readings. Customer is responsible for STLA charges while the vehicle is inoperable due to (a) physical damage to the vehicle; (b) mechanical breakdown caused by vehicle abuse as described in Paragraph 5; and (c) total loss or theft of the vehicle, until all Customer obligations under Paragraphs 8 and 10 have been satisfied.

4. **RETURN OF VEHICLE:** Customer agrees to return the vehicle in the same clean condition and with the same accessories and components as when received by Customer, or Customer will be responsible for the expense of cleaning the vehicle and restoring missing accessories and components, or reimbursing Lessor therefor. Customer will return the vehicle to the location and on the date and time stated on the reverse side of this STLA. Lessor reserves the right to make a written demand for the return of the vehicle at a different place and/or on a different date and time and Customer will comply with that demand. If no date and time is indicated for return of the vehicle, the vehicle will be returned within seven (7) days of Customer's receipt of the vehicle.

5. **VEHICLE ABUSE:** Customer will be responsible for all costs related to (a) damage to the vehicle in excess of or not covered by Customer's insurance, other than normal wear and tear; (b) cost incurred if the vehicle is mired; (c) damages due to operation of the vehicle off a paved road; (d) damages to the vehicle resulting from Customer's failure to check and maintain adequate fluid and lubricant levels daily; (e) damage to or loss of vehicle parts or accessories; (f) damage resulting from unauthorized repair or adjustment to the vehicle; and (g) overloading, abusive or negligent operation of the vehicle. In the event parts or labor are furnished by Lessor, Lessor shall charge retail prices for parts and labor rates prevailing in the area in which any repairs are affected. Under no circumstances will Customer disconnect or tamper with the odometer, hubodometer or hourmeter, and if there is evidence of disconnecting or tampering, Customer agrees to pay charges on the basis of 40 miles for each hour that the vehicle is in Customer's possession at the "mileage" rate shown on the reverse side of this STLA.

6. **OBSERVANCE OF LAWS:** Customer will not permit the vehicle to be used in violation of any local, state or federal law, ordinance or regulation including, but not limited to, any criminal or traffic regulations or statutes, or any environmental laws or regulations governing the transportation and handling of hazardous, toxic, dangerous or illegal materials or substances. Customer will pay for and will defend, indemnify and hold Lessor harmless from any citations, fines, penalties or losses, including forfeiture or seizure, resulting from Customer's use of the vehicle.

7. **TAXES OR FEES:** Customer will pay all sales or use taxes on any charges made by Lessor under this STLA. Customer will obtain and pay for trip permits, third structure taxes (ton-mile, axle-mile and similar taxes), licenses, special fees or taxes required by any local, state or federal law of the United States or Canada. Customer will provide Lessor with trip reports, state required fuel tickets, turnpike receipts, temporary permits and any other documentation required for the filing of fuel and third structure tax returns. Failure to provide required documentation will result in a charge for each mile unreported.

8. **LIABILITY INSURANCE-CUSTOMER PROVIDES:** A. Customer will, consistent with the exclusions and indemnification requirements of Paragraph 8B below and the requirements of paragraph 11, provide and maintain at all times during the term of this STLA an insurance policy covering the vehicle for all bodily injury and property damage liability to third parties with a combined single limit ("CSL") of not less than $1,000,000 for any one accident. Such insurance shall be primary and not excess or contributory. B. Customer will defend, indemnify and hold Lessor harmless from (a) claims, demands, fines, penalties and liabilities ("Loss") not covered by the above stated insurance and/or in excess of the limits of such coverage, regardless of whether such coverage is to be maintained by Customer or Lessor; (b) injuries sustained by Customer or any driver, servant, agent or employee of Customer; (c) any liability imposed upon or assumed by Customer under any Workers' Compensation act, plan or law and/or contract; (d) accidents while the driver is under the influence of alcohol or drugs; (e) allowing an "unauthorized" (see Paragraph 1) driver to operate Lessor's equipment; (f) any violation of paragraph 6 of this STLA resulting in a "Loss"; and (g) operation of the vehicle in violation of this STLA resulting in a Loss.

9. **PHYSICAL DAMAGE INSURANCE-CUSTOMER PROVIDES:** A. Customer will, consistent with the requirements of Paragraph 11, provide and maintain an insurance policy for all physical damage, including but not limited to coverage for collision with another object, overturn, fire, explosion, theft, windstorm, hail, earthquake, flood or vandalism. Customer will be responsible for and will indemnify and hold Lessor harmless from any and all physical damage to, or loss of, the vehicle from any cause whatsoever regardless of whether such loss or damage is covered by Customer's insurance policy.
B. Customer is responsible for and will indemnify and hold Lessor harmless from any and all physical damage to, or loss of, the vehicle resulting from the following causes: (a) vandalism or malicious mischief; (b) fork lift truck operations, loading or unloading, load shifting, and coupling and uncoupling; (c) operation of the vehicle during periods of strike, riot or civil commotion, regardless of the employment of person(s) causing damage; (d) collision with the structure of any underpass, bridge or other object because of insufficient clearance, whether of height or width; (e) loss or damage as described in Paragraph 5 of this STLA; (f) accidents while the driver is under the influence of alcohol or drugs; (g) allowing an "unauthorized" (see Paragraph 1) driver to operate Lessor's equipment: (h) operation of the vehicle in violation of this STLA, such operation resulting in Loss; and (i) loss or damage to or theft of the vehicle.

10. **PHYSICAL DAMAGE INSURANCE - CONDITIONS:** In the event of physical damage to the vehicle, Customer shall pay Lessor the cost, as determined by an appraisal received from an independent adjuster selected by Lessor, that would be incurred to repair the vehicle and restore it to good repair, condition and working order (regardless of whether Lessor elects to make such repairs). In the event parts or labor are furnished by Lessor, Lessor shall charge retail prices for parts and labor rates prevailing in the area in which any repairs are effected. In the event of a total loss of any vehicle, the amount due to Lessor shall be in no event less than 20% of Lessor's Original Value of the vehicle.

11. **INSURANCE REQUIREMENTS AND ACCIDENTS:** Customer will obtain the insurance as specified in Paragraphs 8 and 9 above with an insurance carrier rated A- or better in Best's Key Rating Guide, and in form, satisfactory to Lessor, which names Lessor and any other party designated by Lessor as an additional insured and/or loss payee and provides a waiver of Subrogation by such insurance company in favor of Lessor. Prior to delivery by Lessor to Customer of the vehicle, Customer will provide Lessor with a certificate of insurance, certifying (i) that the insurance coverage(s) cannot be cancelled, terminated or materially changed without 30 days prior written notice to lessor (ii) that all losses under physical damage policies shall be payable solely to Lessor (or any other party designated in writing by Lessor) and (iii) that no act or omission of Customer or any of its officers, agents, employees or representatives shall affect the obligation of the insurer to pay the full amount of any loss. In the event that Customer fails to provide and maintain the required insurance coverage or fails to furnish lessor with required evidence of such Insurance, Lessor is authorized, but not required, to obtain such insurance on behalf of Customer and Customer agrees to pay Lessor for the cost of the insurance so obtained and, alternatively in the event Customer fails to provide, maintain or furnish evidence of insurance, Lessor may terminate this STLA and Customer agrees to return the vehicle to Lessor promptly in accordance with the terms of this STLA. Customer agrees to notify Lessor immediately upon the occurrence of any accident involving the vehicle and to provide Lessor promptly with a detailed written report of the accident, along with copies of all reports Customer has provided to the insurance carrier or any governmental agency. Customer and its agents and employees will cooperate with Lessor and any insurer, in any manner reasonably requested by Lessor, in the reporting, investigation, prosecution or defense of all accidents, claims or suits arising from the operation of the vehicle, and will promptly deliver to Lessor and to the appropriate insurance carrier copies of all papers or notices served upon or delivered to Customer, its agents or employees in connection with any proceeding arising out of the use or operation of the vehicle. Customer hereby irrevocably authorizes Lessor to make, settle and adjust claims with Customer's insurance carrier for physical damage to the vehicle and to endorse the name of Customer on any check or other item of payment for the proceeds of such insurance policies.

12. **TRUCK LEASE:** If Customer is also a customer under a Full Service Lease Agreement ("FSLA") and there are inconsistent or conflicting provisions between the FSLA and this STLA, the provisions stated in the FSLA will control and apply to the vehicle, including without limitation the requirement that Customer provided and maintain insurance if so stated in the FSLA.

13. **CARGO:** Lessor will not be liable for loss of, or damage to, any goods, cargo or property ("Property") left in or upon the vehicle at any time or place. Customer agrees to defend, indemnify and hold Lessor harmless from any liability from (a) any loss of, or damage to, Customer's Property or any Property in Customer's care or custody while such Property is in or upon the vehicle or while the Property is being loaded onto or unloaded from the vehicle; (b) any injury to any person resulting from loading or unloading of property. Customer further agrees that Lessor shall have a lien on Customer's property transported in the vehicle for unpaid charges and expenses. Lessor may, upon notice to Customer, sell such property in satisfaction of all charges, collection, costs and attorneys fees.

14. **OVERLOADING:** Customer will not overload any vehicle in excess of GCW/GVW indicated and will pay for towing service, as well as all damages and any fines resulting from overloading. Lessor may request and Customer agrees to furnish payload weight documentation.

15. **USE OF OTHER EQUIPMENT WITH VEHICLE:** Where Vehicle is operated by Customer with a trailer or other equipment not covered by this Agreement, Customer warrants that such trailer or other equipment will be in good operating condition, compatible in all respect with Vehicle, and in full compliance with all laws and regulations covering said trailer or other equipment and Customer shall indemnify Lessor, its agents and employees from and against all loss, liability and expense resultant from Customer's failure to comply with the foregoing.

16. **VEHICLE DISABILITY:** If the vehicle is disabled or not useable for any reason, Customer will immediately notify Lessor and the vehicle will only be serviced or repaired as authorized by Lessor. Lessor will not be required to provide a substitute vehicle. If the vehicle is disabled or not useable due to Lessor's fault, Customer's only remedy will be a refund of rental charges for the period Customer is deprived of use of the vehicle.

17. **EXPENSES:** Customer will pay Lessor all costs, including attorney's fees, in connection with the collection of amounts payable by Customer to Lessor hereunder or the enforcement of any provisions of this STLA.

18. **WARRANTIES:** EXCEPT AS OTHERWISE EXPRESSLY PROVIDED BY THIS STLA, LESSOR, NOT BEING THE MANUFACTURER OF ANY VEHICLE NOR THE MANUFACTURER'S AGENT, HEREBY EXPRESSLY DISCLAIMS AND MAKES NO EXPRESS OR IMPLIED WARRANTY AS TO ANY MATTER INCLUDING, WITHOUT LIMITATION, THE CONDITION OF THE VEHICLE AND EQUIPMENT, ITS MERCHANTABILITY, OR FITNESS FOR ANY PARTICULAR PURPOSE, IN ANY EVENT, LESSOR WILL NOT BE LIABLE TO CUSTOMER OR ANY THIRD PARTY FOR ANY DIRECT, INDIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGES, INCLUDING WITHOUT LIMITATION, LOSS OF DRIVER'S TIME, LOSS OR INTERRUPTION OF OR DAMAGE TO BUSINESS OR PROFITS, OR FOR DAMAGES OF ANY NATURE CAUSED BY INTERRUPTION IN SERVICE OR AVAILABILITY OF ANY VEHICLE PROVIDED BY LESSOR UNDER THIS AGREEMENT.

19. **GENERAL:** The form of this STLA is intended for general use and if any of the provisions.are in violation of law or unenforceable, those provisions may be modified to the extent required to make them enforceable, or if unenforceable, than those provisions will be deemed to be of no force and effect to the extent of such violation without invalidating any other provisions of this STLA. The titles of the various paragraphs are solely for convenience of the parties and will not be used to explain, modify, amplify or aid in interpretation of the provisions of this STLA. Failure of Lessor to declare any default or exercise any right under this STLA will not waive the default and Lessor will have the right at any time to declare that default and take any action permitted by law. Lessor's waiver of Customer's breach of any provision of this STLA shall not operate or be construed as a waiver of any subsequent breach. This STLA is the entire agreement between the parties and no provision of this STLA can be changed except in writing by an authorized representative of Lessor.